**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SHEILA BUCKNER** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 C 2550 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | Magistrate Judge Morton Denlow |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Sheila Buckner ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB"). Claimant raises the following issues in support of her motion: (1) whether the ALJ properly considered evidence of Claimant's treating physicians' opinions and combined effects of her impairments in his finding of Claimant's residual functional capacity; (2) whether the ALJ's credibility finding regarding Claimant's testimony was improper; and (3) whether the ALJ properly posed a complete hypothetical to the vocational expert. For the following reasons, the Court grants Claimant's motion for reversal or remand and remands the case to the Commissioner for further proceedings consistent with this opinion.

# I. BACKGROUND FACTS

## A. Procedural History

Claimant initially filed for DIB on April 11, 2006, alleging a disability onset date of April 10, 2006. R. 53. The Social Security Administration ("SSA") denied her application on September 8, 2006. R. 57-61. Claimant then filed a request for reconsideration, which the SSA denied on November 9, 2006. R. 62-65. Shortly thereafter, Claimant requested a hearing before an ALJ. R. 67.

On April 10, 2008, Administrate Law Judge John S. Pope ("ALJ") presided over a hearing at which Claimant appeared with her attorney, Sean Perry. R. 19-52. Claimant and Grace Gianforte, a vocational expert, testified at the hearing. No medical expert testified. On November 4, 2008, the ALJ rendered a decision finding Claimant was not disabled under the Social Security Act. R. 8-18. Specifically, the ALJ found Claimant had the "residual functional capacity to perform light work . . . except occasional climbing, balancing, stooping, kneeling, crouching and crawling" and that "the claimant is capable of performing past relevant work as a billing clerk and medical secretary." R. 14-17.

Claimant then filed for a review of the ALJ's decision to the Appeals Council. R. 7. On February 25, 2009, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. R. 1-3. Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

**B.     Hearing Testimony - April 10, 2008**

    **1.     Sheila Buckner - Claimant**

At the time of the hearing, Claimant was 62 years old, married, and living with her husband. R. 25. Claimant completed education through the 10th grade and has past relevant work experience as a medical biller. R. 26. In addition to billing, Claimant's prior work experience included reception work, cleaning and other clerical tasks. R. 27. Claimant has not worked since April 10, 2006, her alleged disability onset date. R. 26. Claimant testified that she resigned from her job because she had a "meltdown" and could no longer deal with pain and chronic fatigue. *Id*.

During the hearing, Claimant explained that fibromyalgia, chronic fatigue syndrome and spinal stenosis of the entire spine prevent her from working. R. 28-29. Additionally, she claimed she was in a constant state of pain and fatigue, which made it difficult for her to stand, sit, walk, lift and carry. *Id*. Claimant stated that the pain became so severe and constant her doctor suggested she have an MRI, which revealed a herniated disc. R. 32. Subsequently, on October 4, 2006, Dr. Abdul Amine performed surgery on Claimant's lower back. R. 32-33. Claimant stated that among others, she has taken Lyrica, Fentanyl, Zoloft and various vitamins and supplements to alleviate the pain caused by fibromylagia, chronic fatigue and spinal stenosis. R. 30, 34-35. Even with pain medications, Claimant asserts she is never "completely pain free" and frequently has problems with concentration, crying spells and, on "bad days," cannot muster the energy to get out of bed. R. 35-40. Claimant also alleged she has up to four "bad days" per week, where she may not leave her bed. R. 40.

However, Claimant reported that on a "good day" she is able to perform simple household chores such as cleaning, cooking and laundry. R. 37-40.

Claimant also testified she suffers from depression and stress, which she declared would prevent her from handling the stress of a work environment. R. 42. Additionally, Claimant stated that although she interacts with her husband and children several times a week, she does not see her friends or participate in her former activities. R. 42-43. When the ALJ asked her if she had "problems getting along with people," Claimant responded "oh, no." R. 43.

    2.    **Grace Gianforte - Vocational Expert ("VE")**

The Vocational Expert, Grace Gianforte, described Claimant's past relevant work as a billing clerk and medical secretary, which she categorized as semi-skilled to skilled. R. 49-50. While questioning the VE, the ALJ asked whether a 62-year old with a 10th grade education and the same past relevant work experience as Claimant, limited to only sedentary or light work with occasional climbing, balancing, stooping, kneeling, crouching and crawling, could perform Claimant's past relevant work. *Id*. The VE responded affirmatively to the ALJ's hypothetical question. *Id*. However, the VE did not have an opinion as to whether there would be jobs available for Claimant if the ALJ found her totally credible and all alleged impairments were supported by the medical evidence. R. 50. Finally, the VE stated that a worker who had to lie down two to four hours in an eight-hour day would be inconsistent with the Department of Labor's definition of full-time, competitive employment, which requires at least 32 hours of work per week. R. 51.

**C.     Medical Evidence**

   **1.     Dr. Augusto N. Pareja - Claimant's Treating Physician**

Claimant sought treatment from Dr. Augusto N. Pareja ("Dr. Pareja") from April 2005 to February 2007. R. 284-337. Dr. Pareja diagnosed Claimant with degenerative joint disease, pain symptoms, and chronic fatigue. R. 284-337; 376-459; 528-651. On June 27, 2006, Dr. Pareja ordered spinal MRIs which revealed a mild chronic compression fracture and herniated discs in the lumbar spine, minor degenerative changes in the thoracic spine, and near alignment of the cervical spine. R. 385-390.

Dr. Pareja treated Claimant weekly for her conditions, but after nearly two years of ineffective treatment, on February 16, 2007, Dr. Pareja opined that Claimant's fibromyalgia, chronic fatigue and spinal stenosis caused her to be permanently disabled. R. 722. However, he also noted in a February 2007 assessment that Claimant had "worked multiple jobs despite her pain/fatigue," but "she cannot work." R. 704. On March 5, 2007, Dr. Pareja completed a multiple impairment questionnaire where he concluded that Claimant could not sit, stand or walk for more than one hour. R. 711. Dr. Pareja also determined that Claimant could not lift more than five pounds and exhibited limited use of her upper extremities to grasp, manipulate and reach objects. R. 712-13.

   **2.     Dr. Abdul Amine - Claimant's Treating Surgeon**

On September 16, 2006, Dr. Abdul Amine ("Dr. Amine") examined Claimant and discovered she suffered from left sciatica, herniated disc at L3-4, bladder dysfunction and

myelopathy. R. 734. On October 4, 2006, Dr. Amine performed lumbar surgery on Claimant to repair her herniated L3-4 discs. R. 734-35. One week after surgery, Dr. Amine deemed Claimant "pain-free." R. 735. Several months later in January 2007, Claimant returned to Dr. Amine complaining of lower back pain, but, upon examination, he did "not find any deficits" and recommended that she use a brace and heat and Ibuprofen to alleviate her pain. R. 735.

### 3. Dr. Khaja Asadullah - Claimant's Treating Physician

Dr. Khaja Asadullah ("Dr. Asadullah") treated Claimant monthly from June to December 2007. R. 757. In a fibromyalgia impairment questionnaire dated December 6, 2007, Dr. Asadullah ("Dr. Asadullah") noted that Claimant suffered from several problems including fibromyalgia, fatigue, spinal stenosis and severe lower back pain. R. 758-60. Dr. Asadullah also noted that on a scale of one to ten (ten being the most severe pain), Claimant reported her pain level as a ten. *Id.* Additionally, he noted the pain limited her to sitting for no longer than one hour and standing for no longer than two hours per day. *Id.* Dr. Asadullah opined that Claimant's pain would make it difficult for her to concentrate constantly and consistently, though in his opinion she was still capable of performing low stress jobs. R. 760-61. He estimated that as a result of her impairments or treatment, she would like be absent from work more than three times a month. R. 761.

### 4. Dr. Zaki Anwar - Claimant's Pain Management Specialist

From approximately June 2007 to April 2008, Claimant visited Dr. Zaki Anwar ("Dr. Anwar") each month for pain management. R. 789-816. Dr. Anwar observed that Claimant

6

experienced shooting pains that radiate from her lower back to her hips and down to her legs. *Id*. He additionally noted Claimant's pain on palpation of joints, paraspinal spasms and difficulty getting up. *Id*.

     **5.**     **Dr. Alan W. Jacobs - State Agency Examining Psychologist**

At the behest of the SSA, Dr. Alan W. Jacobs, Ph.D. ("Dr. Jacobs") examined Claimant on August 2, 2006. R. 339-41. Claimant stated that she saw a psychiatrist when she experienced multiple deaths in her family, but at the time of the examination, she no longer felt depressed. *Id*. Dr. Jacobs reported that during the examination Claimant was pleasant, polite, cooperative and, overall, appeared pleasant and quite normal. R. 341. Dr. Jacobs concluded that Claimant had a history of adjustment disorder and cannabis dependence, but the depression had resolved and she is "capable of managing her own benefits." R. 341.

     **6.**     **Dr. Virgilio Pilapil and Dr. Frank Norbury - State Agency Reviewing Physicians**

In September 2006, Dr. Virgilio Pilapil ("Dr. Pilapil"), a non-examining reviewer, reviewed Claimant's medical record on behalf of the SSA. R. 356-63. Despite some physical limitations due to pain and fatigue, Dr. Pilapil opined that Claimant could lift twenty pounds occasionally and ten pounds frequently and stand and walk for about six hours in an eight-hour work day. R. 357. He also determined Claimant could occasionally climb, balance, stoop, kneel, crouch and crawl. R. 358. Two months later on November 8, 2006, reviewing physician Dr. Frank Norbury affirmed Dr. Pilapil's conclusions. R. 460-62.

7

**D.     The ALJ's Decision - November 4, 2008**

After a hearing and review of the medical evidence, the ALJ determined Claimant had the residual functional capacity ("RFC")[1] to perform past relevant work and therefore denied her application for DIB. R. 8-17. The ALJ evaluated Claimant's application under the required five-step sequential analysis. R. 13-18. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since April 10, 2006, the alleged onset date. R. 13. At step two, the ALJ determined Claimant had the severe impairments of fibromyalgia and degenerative disc disease. *Id*. At step three, the ALJ found Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. 14. The ALJ then proceeded to consider Claimant's RFC and found Claimant capable of performing "light" work,[2] except with only occasional climbing, balancing, stooping, kneeling, crouching or crawling. *Id*.

---

[1] The RFC is the most that a claimant can do despite the effects of her impairments. 20 C.F.R. § 404.1545(a).

[2] Light work is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds and a "good deal" of walking/standing, or sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

After reportedly considering all relevant evidence, the ALJ found Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements regarding "the intensity, persistence, and limiting effects of [those] symptoms are not credible." R. 15. The ALJ found that Claimant's complaints of severe lower back and neck pain lacked sincerity and suggested exaggerated symptoms and physical limitations. *Id*. Additionally, the ALJ concluded that the opinions of Claimant's treating physicians, who treated her for a relatively brief period of time, were not supported by the medical evidence and were actually inconsistent with the treatment notes, diagnostic testing, and evidence of Claimant's daily activities. R. 17. For example, the ALJ discussed Dr. Asadullah's opinion and found his assessment was not supported by the medical evidence on record. *Id*. Specifically, the ALJ highlighted Dr. Asadullah's inability to find any description of Claimant's condition that would sufficiently explain why he stated Claimant could not return to work in February 2008. *Id*. The ALJ also emphasized the VE's assertion that if the claimant was only limited to sedentary work, she still would have the ability to perform her past work. *Id*.

At step four, the ALJ concluded Claimant could perform her past relevant work as a billing clerk and medical secretary. *Id*. Because of his step four finding, the ALJ did not make a step five finding. Therefore, he concluded she was not disabled under the Social Security Act. *Id*.

9

## II. LEGAL STANDARDS

**A.     Standard of Review**

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's

judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.    Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals a

listed impairment; 4) whether the claimant can perform past relevant work; and 5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

### III. DISCUSSION

Claimant raises the following issues in support of her motion: (1) whether the ALJ properly considered evidence of Claimant's treating physicians' opinions and the effects of her fibromyalgia in his finding of Claimant's residual functional capacity; (2) whether the ALJ's credibility finding regarding Claimant's testimony was improper; and (3) whether the ALJ properly posed a complete hypothetical to the vocational expert.

**A. The ALJ Did Not Properly Consider Claimant's Treating Physicians' Opinions or the Effects of Fibromyalgia in Determining Her Residual Functional Capacity.**

An ALJ makes a residual functional capacity ("RFC") determination by weighing all the relevant evidence of record. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. In doing so, he must determine what weight to give the opinions of the claimant's treating physicians. 20 C.F.R. § 404.1527. The ALJ must also consider to what extent the claimant's symptom reports are substantiated by the other evidence of record. 20 C.F.R. § 404.1529. Claimant argues that the ALJ in this case made an erroneous "light" RFC finding by: 1) improperly rejecting the findings of Claimant's treating physicians, as well as 2) failing to consider subjective evidence of Claimant's fibromyalgia-related pain.

12

### 1. The ALJ Failed to Sufficiently Explain Why He Rejected Opinion Evidence From Claimant's Treating Physicians.

A treating physician's opinion is entitled to controlling weight if it is supported by the medical findings and not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). However, so long as the ALJ "minimally articulates his reasons," he may discount a treating physician's opinion if inconsistent with that of a consulting physician or other substantial medical evidence. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer controlling but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

When an ALJ does decide to discredit a treating physician's opinion, he must at least minimally discuss the reasons why. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2001). A court "cannot evaluate whether the ALJ properly rejected [a treating physician's report] in favor of the other doctors' reports, or even ensure that the ALJ examined this report, unless the ALJ explains his reasoning." *Id.*

In this case, the ALJ rejected the "opinion evidence" because it was "offered by doctors who have treated the claimant for a relatively short period of time [and is] not generally supported by narrative and are inconsistent with the treatment notes, diagnostic testing and the claimant's activities of daily living." R. 17. However, in explaining this conclusion, the ALJ referred only to the opinion evidence from Dr. Asadullah, who treated

13

Claimant for approximately six months in 2007. *Id*.

Noticeably absent in the ALJ's explanation was any reference to the reports or treatment notes from Dr. Pareja and Dr. Anwar, who have more extensive treatment histories with Claimant. *Id.* Dr. Pareja treated Claimant regularly for over two years, but the only reference to him at all in the ALJ's decision is a brief two sentences early on in the summary of the medical evidence. R. 14. The ALJ also failed to explain what weight, if any, he gave to the reports of Dr. Anwar, who treated Claimant monthly for pain management from June 2007 through April 2008.

By failing to even minimally explain why he rejected Dr. Pareja's and Dr. Anwar's findings, although discussing in some detail why he rejected Dr. Asadullah's opinion, the ALJ did not build the requisite bridge from the evidence to his conclusions. Particularly given that Dr. Pareja treated Claimant more frequently than any other physician and ran a number of diagnostic exams, his opinion potentially could have carried more weight. *See* R. 284-337; 376-459; 528-651. Dr. Anwar's notes also provide support for Claimant's ongoing pain reports. *See* R. 789-816. Without at least some explanation, though, the Court cannot assure that the ALJ even considered these lines of evidence supporting Claimant's claim.

Further problematic is the ALJ's reliance on the "evidence opposing" the treating physicians' reports as the basis to give them less weight. R. 17. Although the ALJ did not articulate precisely what the opposing evidence was, he was presumably referring to the reports of the state agency reviewing physicians, Drs. Pilapil and Norbury, who reviewed

14

Claimant's medical records in September 2006 and November 2006, respectively. Both physicians concluded Claimant had the capacity to perform full-time work rising to the "light" level based upon the records they reviewed. R. 357-58, 460-62.

The problem with the state agency reviews is that Claimant submitted considerable medical evidence in this case well after they were conducted, including records dated through 2007 and into 2008. Presented with this situation, the ALJ should have obtained an updated medical expert opinion pursuant to SSR 96-6p. The ALJ could have brought in a Medical Expert to testify at the hearing, or sent the Claimant out for a consultative exam; however, he took no steps to do so. The medical opinions he relied upon to contradict Claimant's treating physicians were therefore not based on a complete review of all the relevant evidence. This error further weakens the ALJ's rationale for rejecting the treating physicians' evidence and necessitates a remand.

> **2.     The ALJ Did Not Sufficiently Explain Why Claimant's Reported Fibromyalgia Symptoms Were Inconsistent With the Medical Evidence.**

In evaluating subjective symptoms such as pain, the ALJ is required to consider the extent to which symptom reports are consistent with the other evidence, including lab findings, objective testing, treatment history, and activities of daily living ("ADLs"). 20 C.F.R. § 404.1529(a) & (c). The ALJ must also set forth a logical explanation of why symptom-related limitations can or cannot be reasonably accepted in light of the medical evidence. SSR 96-8p.

Claimant argues that the ALJ improperly dismissed Claimant's fibromyalgia

symptoms due to a lack of supporting objective lab test results. However, it is not evident that the ALJ diminished Claimant's fibromyalgia-related complaints on that basis. Rather, the ALJ found the reported intensity and persistence of Claimant's fibromyalgia symptoms to be inconsistent with Claimant's ADLs, which she testified to include showering without assistance, doing the laundry and sporadic light housework, and assisting her terminally ill mother-in-law. R. 16. The ALJ determined that Claimant's ability to perform these tasks belied her claimed impairments due to fibromyalgia-related pain and fatigue. *Id.*

The real problem with the ALJ's conclusion on this point is that his reasoning has been squarely rejected in this Circuit, which has repeatedly held that the ability to engage in light housework does not equal the ability to sustain full-time work duties. *See, e.g., Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004). Claimant in this case reported that she can do light housework on "good days," but on "bad days" she is in bed nearly all day. R. 35-40. This testimony does not support the ALJ's conclusion that Claimant's fibromyalgia symptoms are inconsistent with her ADLs. The ALJ did not engage in any further discussion of Claimant's fibromyalgia limitations in light of the other evidence in the record. Thus, he missed another crucial piece of the bridge supporting his RFC finding.

**B.     The ALJ's Credibility Finding Was Not "Patently Wrong," but In Light of the Remand, the ALJ Should Revisit the Issue.**

When faced with a claimant alleging subjective pain symptoms, an ALJ evaluates the credibility of a claimant's testimony about her pain. SSR 96-7p. The ALJ must consider the

testimony in light of the entire record and be "sufficiently specific" as to the reasons for his credibility determination. *Id.* That said, the ALJ is in the best position to observe witnesses, and his credibility finding will not be overturned as long as it has some support in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001). "Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). A discrepancy between the reported pain and the medical evidence is probative that a witness may be exaggerating her condition. *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000).

Here, the ALJ evaluated Claimant's credibility as to the purported persistence and intensity of her back and neck pain. R. 15-16. He found that Claimant's report of constant and severe pain and fatigue, made worse by activity, was inconsistent with the medical evidence. *Id.* Specifically, he referred to spinal MRI results showing only minor degenerative changes, physical examinations which revealed positive leg raises and bending, and reports from Claimant's surgeon documenting significant improvement following spinal surgery in 2006. R. 16. In light of this evidence and his observation of Claimant's testimony, the ALJ found the evidence "strongly suggests exaggerated symptoms and limitations." R. 15.

The ALJ's credibility determination has some support in the record, and the Court cannot say that it was "patently wrong." However, in light of the remand in this case, the ALJ should revisit the credibility issue to determine whether his findings remain the same.

C. **The ALJ's Hypothetical to the Vocational Expert Requires Remand Because It Was Based Upon An Insufficient RFC Finding.**

Claimant contends that because the ALJ erred in assessing her impairments and calculating her RFC, the ALJ's hypotheticals to the VE were therefore flawed. In such a situation where the ALJ's hypothetical to the VE is based upon an insufficient RFC, it must be remanded to the SSA for further proceedings. *Young v. Barnhart*, 362 F.3d 995, 1004-05 (7th Cir. 2004).

Here, the ALJ's hypothetical to the VE was clearly based on his RFC finding – *i.e.*, limiting Claimant to only sedentary or light work with occasional climbing balancing, stooping, kneeling, crouching, and crawling. *See* R. 14, 49-50. And for the reasons discussed in Part A, *supra*, the ALJ failed to account for all of the relevant evidence in making his RFC finding. In light of that conclusion, the hypothetical posed to the VE based on that RFC finding must also be reconsidered in light of any new findings on remand.

## IV. CONCLUSION

**For the reasons set forth in this opinion, the Court grants Claimant's motion and remands the case to the Commissioner for further proceedings consistent with this opinion.**

**SO ORDERED THIS 13TH DAY of JANUARY, 2010**.

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Frederick J. Daley, Jr.
Kimberly Ann Jones
Daley, DeBofsky & Bryant
55 W. Monroe St.
Suite 2440
Chicago, IL 60603

Counsel for Plaintiff

James E. Hail
Assistant Regional Counsel
200 West Adams Street
Suite 3000
Chicago, IL 60606

Ann L. Wallace
U. S. Attorney's Office
219 South Dearborn Street
Suite 500
Chicago, IL 60604

Counsel for Defendant